United States District Court
Southern District of Texas
**ENTERED**
March 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE L. GALVEZ,<br>Plaintiff, | §<br>§<br>§ | CIVIL ACTION NO<br>4:22-cv-00712 |
| vs. | §<br>§<br>§<br>§ | JUDGE CHARLES ESKRIDGE |
| ARANDAS BAKERY<br>NO. 3 INC,<br>Defendant. | §<br>§<br>§ | |

MEMORANDUM AND ORDER
COMPELLING ARBITRATION

The motion by Defendant Arandas Bakery No 3 to dismiss or stay and compel arbitration is granted. Dkt 8.

1.   Background

Defendant Arandas Bakery No 3 serves Mexican pastries and desserts. Plaintiff Jose Galvez was employed as a delivery driver for Arandas from October 2010 until October 2021. Dkt 1 at ¶¶ 12–14. Galvez contends that during his employment he was only ever paid for forty-five and a half hours of work each week, even though he always worked between sixty and seventy-two hours. He alleges that he never received overtime pay. Id at ¶¶ 22–27.

Galvez filed this action to assert claims for failure to pay the minimum wage, failure to pay overtime, and willful violation of the Fair Labor Standards Act. He also pleaded collective action allegations and sought liquidated damages, attorney fees, and costs. Id at ¶¶ 48–88.

Arandas establishes that Galvez signed an employment agreement on October 17, 2010. Galvez is a Spanish-speaker, and he signed a Spanish version of the document. Arandas has attached both the signed document

and a certified translation. Dkt 18 at 5–12 (signed arbitration agreement and translation).

The agreement that Galvez signed states that the purpose "of this Binding Arbitration Agreement, ('Agreement') is to resolve claims by Arbitration, which mutually binds me and my employee Legal Entity." Id at 9 (translation, misinterpreting *mi empleador* as *my employee* rather than *my employer*).

The agreement contains the following, pertinent terms:

> I agree to Arbitration to resolve any and all issues, disputes, controversies, or controversies related to my employment with the Company and affiliated entities and Myself . . . I understand the purpose of this Agreement is to provide the Company and Myself with a means by which to resolve claims or disputes through binding arbitration in lieu of a lawsuit . . . I agree that the purpose of this Agreement is to resolve disputes between The Company and Me.

Ibid.

The agreement also includes this waiver of certain rights and attendant agreement not to participate in certain actions:

> I agree that I waive my right to petition, participate or proceed in a class or collective action (including Fair Labor Standards Act (FLSA) class actions), including, but not limited to, receiving or requesting notice of a pending class action. Therefore, I agree that I will not seek to participate in the pending lawsuits. Therefore, I agree that I will not seek participation in any class or collective action lawsuits under this Agreement

> unless there is a written agreement
> between the Company and Myself.

Ibid.

The agreement also defines which types of disputes are subject to arbitration:

> Any issue covered under this Agreement or
> relating to the legality or interpretation of
> this Agreement shall be heard and decided,
> if applicable, under the provisions of and
> authority of the 'Federal Arbitration Act. 9
> U.S.C.' for the purpose of this Agreement
> and any employment related dispute
> ("Dispute"), including but not limited to all
> disputes, including statutory and common
> law claims, whether state, federal or local
> law including but not limited to, alleged
> claims arising out of . . . claims arising out
> of work-related activities, . . . the Fair
> Labor Standards Act (FLSA) . . . I
> acknowledge that any dispute directly or
> indirectly affecting my employer is subject
> to binding arbitration.

Ibid (translation).

Pending is a motion by Arandas to dismiss or to stay litigation and compel arbitration pursuant to the foregoing terms of agreement made as part of Galvez's employment with Arandas. Dkt 8 at 2; see also Dkt 18 at 7.

2.   Legal standard

Section 3 of the Federal Arbitration Act states:

> If any suit or proceeding be brought in any
> of the courts of the United States upon any
> issue referable to arbitration under an
> agreement in writing for such arbitration,
> the court in which such suit is pending,
> upon being satisfied that the issue involved
> in such suit or proceeding is referable to
> arbitration under such an agreement, shall
> on application of one of the parties stay the

> trial of the action until such arbitration has
> been had in accordance with the terms of
> the agreement, providing the applicant for
> the stay is not in default in proceeding with
> such arbitration.

9 USC § 3.

When deciding whether to enforce an arbitration agreement, the court first determines whether a valid agreement to arbitrate exists. It then considers whether the subject dispute falls within the scope of that agreement. *Edwards v Doordash Inc*, 888 F3d 738, 743 (5th Cir 2018). The court must compel arbitration if both elements are satisfied unless there is a federal statute or policy to the contrary. See *Sherer v Green Tree Servicing LLC*, 548 F3d 379, 381 (5th Cir 2008).

Resolution of disputes over the "very *existence*" of an arbitration agreement is solely a decision for a court. *Newman v Plains All American Pipeline, LP,* 23 F4th 393 at 398 (5th Cir 2022) (emphasis in original) (hereafter *Newman I*). Questions regarding the existence of an arbitration agreement include disputes "about whether the Plaintiff[ ] must arbitrate" with the defendant because they are disputes over "the *existence* of an agreement to arbitrate." *Newman v Plains All American Pipeline, LP,* 2022 WL 1114407 at *2 (5th Cir 2022) (emphasis in original) (hereafter *Newman II*).

Recent Fifth Circuit guidance explains, "When a court decides whether an arbitration agreement exists, it necessarily decides its enforceability between parties." *Newman I*, 23 F4th at 398. And enforceability questions are for the court because the questions of whether an arbitration agreement exists and whether the agreement is enforceable between the parties "are two sides of the same coin." Ibid.

Texas law places the initial burden to establish the existence of an agreement to arbitrate on the party seeking to compel arbitration. *Henry v Gonzalez*, 18 SW3d 684, 688 (Tex App—San Antonio 2000, pet dismissed). To meet this

4

burden, it must be shown by a preponderance of the evidence that a valid arbitration agreement exists for that employee. *In re JPMorgan Chase & Company*, 916 F3d 494, 503 (5th Cir 2019). "Once the existence of an arbitration agreement has been established, a presumption attaches favoring arbitration," and "the burden shifts to the opposing party to establish some ground for the revocation of the arbitration agreement." *Henry*, 18 SW3d at 689; *In re Sands Brothers & Co*, 206 SW3d 127, 129 (Tex App—Dallas 2006, no pet).

### 3. Analysis

Galvez doesn't contest that he signed the document or that his employer at the time was Arandas. Dkt 11 at 6–7. But he does contend that no arbitration agreement exists between the parties because the document doesn't name Arandas, instead referring only to "Legal Entity" or "The Company." Galvez argues that he was never employed by this non-existent party, and thus he and Arandas haven't entered into an arbitration agreement, and he isn't bound to arbitrate his dispute with Arandas. Dkt 11 at 6–7. He also requests limited discovery to resolve the question of whether an arbitration agreement exists between Arandas and Galvez pursuant to Section 4 of the Federal Arbitration Act, 9 USC § 1 *et seq*, ultimately with reference of the matter to a jury for resolution. Id at 7.

### a. Existence of agreement to arbitrate

"Texas has no presumption in favor of arbitration when determining whether a valid arbitration agreement exists." *Huckaba v Ref-Chem, LP*, 892 F3d 686, 688 (5th Cir 2018), citing *J.M. Davidson Inc v Webster*, 128 SW3d 223, 227 (Tex 2003). An employer attempting to enforce an arbitration agreement thus must establish that "the agreement meets all requisite contract elements." *J.M. Davidson*, 128 SW3d at 228. Those elements are (i) an offer, (ii) an acceptance in strict compliance with the terms of the offer, (iii) a meeting of the minds, (iv) each party's consent to the terms, and (v) execution and delivery of the contract with intent that it be mutual and binding. *Huckaba*, 892 F3d at 689 (quotation marks and citation omitted).

5

The Fifth Circuit observes, "It is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its written terms." *American Heritage Life Insurance Co v Lang,* 321 F3d 533, 538 (5th Cir 2003). "Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he reads it or believed it had different terms." *CBE Group Inc v Lexington Law Firm*, 993 F3d 346, 351 (5th Cir 2021), quoting *In re McKinney*, 167 SW3d 833, 835 (Tex 2005) (quotation marks omitted).

The dispute here concerns the third element as to meeting of the minds. Galvez contends that none can have occurred because one of the parties doesn't exist. He asserts "a nonexistent party cannot enter into a contract," and the document he signed purports to be an agreement between him and a nonexistent party, "Legal Entity." Galvez argues from this that he and Arandas aren't bound by any arbitration agreement. Dkt 11 at 5–6, citing *WesternGeco LLC v Input/Output Inc*, 246 SW3d 776, 786 (Tex App—Houston [14th Dist] 2008, no pet).

Arandas responds that parol evidence permissibly clarifies the circumstances surrounding the execution of a document as to any matters in doubt. Dkt 16 at 3, citing *Jordan v Rule*, 520 SW2d 463, 465 (Tex App—Houston [1st Dist], 1975, no writ); see also *Gunda Corp v Yazhari*, 2013 WL 440577 at n 6 (Tex App—Houston [14th Dist] 2013, no pet). It contends that the "fact that a principal's name is not designated in the instrument and that the agency of the signing party does not appear upon the face of the writing, is not conclusive evidence that the principal was not a contracting party"—and parol evidence makes it quite apparent that the agreement is between itself and Galvez. Ibid.

The rule against parol evidence generally prohibits the introduction of extrinsic evidence to contradict the terms of an integrated written contract. *URI, Inc v Kleberg County*, 543 SW3d 755, 764 (Tex 2018). But courts permit the introduction of parol evidence to determine the identities

6

of the parties to an agreement. *Espinoza v CareerStaff Unlimited Inc*, 2022 WL 313434, *3 (ND Tex), citing *In re Ledet*, 2004 WL 2945699, *3 (Tex App—San Antonio, 2004, no pet) and *Jordan*, 520 SW2d at 465.

Galvez is correct that the identity of his employer isn't apparent from the face of the signed agreement. But this serves only to make it appropriate to consider parol evidence on the identity and relationship of the contracting parties. He did, after all, enter into an agreement with *someone*. Arandas relies in this respect principally upon information contained in the affidavit of Rob Clair, the Chief Operating Officer of Arandas. He asserts:

> As part of his employment, Jose L. Galvez signed an arbitration agreement on October 17, 2010. A true and correct copy of this agreement is attached hereto as "Exhibit A." It is Arandas Bakery No 3's regular practice for employees to sign an arbitration agreement as part their employment agreement. It is Arandas Bakery No 3's regular practice to maintain such as part of an employee's personnel file. A copy of this agreement was maintained by Arandas Bakery No 3 in the ordinary course of business.

Dkt 18 at 14.

Galvez attaches a signed declaration where he states that he was employed by Arandas, and that he was never employed by "Legal Entity, Owner 1, Owner 2, or Owner 3." Dkt 11-1. But there's certainly no question that Galvez signed an agreement to arbitrate and that he was employed by Arandas. Parol evidence thus readily establishes that Galvez signed an agreement to arbitrate with his current employer, Arandas, and that agreement was maintained by Arandas. Dkt 18 at 14.

An arbitration agreement exists between Galvez and Arandas Bakery.

b. Enforceability of arbitration agreement

Galvez doesn't otherwise challenge the enforceability of the arbitration agreement. It is thus enforceable between Galvez and Arandas.

c. Scope of arbitration agreement

The arbitration agreement states in pertinent part, "I agree to Arbitration to resolve any and all issues, disputes, controversies, or controversies related to my employment with the Company and affiliated entities and Myself." Issues covered under the agreement include "claims arising out of . . . the Fair Labor Standards Act (FLSA)." Dkt 18 at 9 (translation).

Galvez alleges that Arandas willfully failed to pay minimum wage and overtime, in violation of the FLSA. Dkt 1 at ¶¶ 48–88. Arandas argues that the arbitration agreement specifically covers employment-related disputes pursuant to the FLSA, and thus that it covers Galvez's claims. Dkt 8 at 6–7. Galvez makes no argument that this dispute falls outside the scope of the arbitration agreement.

When determining "whether a claim falls within the scope of an arbitration agreement, [courts] focus on the factual allegations of the complaint, rather than the legal causes of action asserted." *Prudential Securities Inc v Marshall*, 909 SW2d 896, 900 (Tex 1995). The factual allegations as to failure to pay minimum wage and overtime support the conclusion that the dispute falls within the scope of the arbitration agreement.

d. Arbitrability of claims

Arandas argues that, to the extent a valid arbitration agreement exists, there are no statutory or policy reasons to preclude arbitration from proceeding on an individual level. Dkt 8 at 7. Galvez only argues generally about the need for a court to decide the gateway questions of whether a dispute is arbitrable but offers no argument otherwise. Dkt 11 at 4–5.

The Fifth Circuit has "long recognized that FLSA claims are subject to arbitration." *Reyna v International*

*Bank of Commerce*, 839 F3d 373, 378 (5th Cir 2016); see also *Carter v Countrywide Credit Industries Inc*, 362 F3d 294, 298 (5th Cir 2004). Galvez's individual FLSA claims are arbitrable.

e.   Request for jury trial

Galvez has demanded a jury trial on whether a valid arbitration agreement exists. He cites Section 4 of the Federal Arbitration Act in support of his demand. Dkts 11 at 7, 10. That provision states in pertinent part:

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be *in issue*, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.

9 USC § 4 (emphasis added).

The Fifth Circuit finds it "well-established that a party to an arbitration agreement cannot obtain a jury trial merely by demanding one." *American Heritage Life Insurance Co v Orr*, 294 F3d 702, 710 (5th Cir 2002) (quotation marks and citation omitted). Instead, as noted by the emphasis above, the party must actually put the existence of an arbitration agreement at issue. *Prescott v Northlake Christian School*, 141 F Appx 263, 269 (5th Cir 2005); see also *Butler v Z&H Foods Inc*, 2021 WL 4073110, *1 (5th Cir 2021, *per curiam*). To do so, a party "must make

at least some showing that under prevailing law, he would be relieved of his contractual obligations to arbitrate if his allegations proved to be true." *Orr*, 294 F3d at 710 (quotation marks and citation omitted); see also *Z&H Foods*, 2021 WL 4073110 at *1. The party must "produce some evidence to substantiate his factual allegations." *Orr*, 294 F3d at 710 (quotation marks and citation omitted); see also *Z&H Foods*, 2021 WL 4073110 at *1. This paradigm continues to apply even after *Newman*. See *Dow v Keller Williams Realty, Inc*, 2022 WL 4009047, n 9 (ND Tex 2022).

Galvez produces no evidence and makes no factual allegations that (if true) would relieve him of his obligation to arbitrate. He thus isn't entitled to a jury trial on whether a valid arbitration agreement exists.

f.   Disposition

Section 3 of the FAA provides that, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement," the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."

This speaks in terms only of a stay. But the Fifth Circuit has permitted dismissal of claims "when all of the issues raised in the district court must be submitted to arbitration." *Adam Technologies International SA de CV v Sutherland Global Services, Inc*, 729 F3d 443, n 1 (5th Cir 2013); see also *Alford v Dean Witter Reynolds, Inc*, 975 F2d 1161, 1164 (5th Cir 1992). The Fifth Circuit later clarified that this simply meant that district courts had discretion whether to stay or dismiss—not "that dismissal was required under the circumstances, much less that failure to dismiss would have been an abuse of discretion." *Apache Bohai Corp, LDC v Texaco China, BV*, 330 F3d 307, n 9 (5th Cir 2003).

Arandas seeks a dismissal of the claims with prejudice rather than a stay because all claims are based on the FLSA and Galvez's employment with Arandas, and thus subject to arbitration under the arbitration agreement.

Dkt 8 at 9. Galvez makes no argument on this point. Because all of Galvez's claims brought under the FLSA are subject to arbitration, dismissal is appropriate.

One aspect of his claims puts this in bright relief—his claim towards collective action under the FLSA. To the contrary, the arbitration agreement expressly states, "I agree that I waive my right to petition, participate or proceed in a class or collective action (including Fair Labor Standards Act (FLSA) class actions)." Dkt 18 at 9 (translation). While FLSA claims are arbitrable, arbitration agreements are to be enforced according to their terms—"including terms providing for individualized proceedings." *Epic Systems Corp v Lewis*, 138 S Ct 1612, 1619 (2018); see also *Carter*, 362 F3d at 298 (holding that no substantive right exists to proceed collectively under the FLSA). The fact that the FLSA *allows* employees to sue on behalf of "themselves and other employees similarly situated" does not permit courts "to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent." Id at 1623, 1626; see also 29 USC § 216(b).

No good reason suggests any contrary conclusion as to his individualized claims. But discretion dictates dismissal is best entered without prejudice. See *Fedmet Corp v M/V BUYALYK*, 194 F3d 674, 679 (5th Cir 1999).

### 4. Conclusion

The demand by Plaintiff Jose L Galvez for a jury trial is DENIED. Dkt 10.

The motion by Defendant Arandas Bakery No 3 to dismiss the action and compel arbitration is GRANTED. Dkt 8.

This action is DISMISSED WITHOUT PREJUDICE in favor of arbitral proceedings to be instituted by Galvez against Arandas, as provided for in their arbitration agreement.

A final judgment will issue by separate order.

SO ORDERED.

Signed on March 24, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge